IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SUZANNE D. COYNE and
ROBERT J. COYNE, SR.,

      Plaintiffs,

v.                                                    CIV 15-0054 SCY/KBM

LOS ALAMOS NATIONAL SECURITY, LLC,
NICHOLAS DEGIDIO, and GAIL MCGUIRE,

      Defendants.

**MEMORANDUM OPINION AND ORDER
ON DEFENDANT LANS' MOTION TO COMPEL**

THIS MATTER comes before the Court on Defendant Los Alamos National Security, LLC's ("LANS") Motion to Compel Responses to Discovery (*Doc. 57*) filed on January 28, 2016. Having considered Plaintiffs' Response (*Doc. 61*) and Defendant LANS' Reply (*Doc. 65*), as well as the relevant law, the Court finds the motion to be well-taken and grants it in part.

**I.    BACKGROUND**

In her Complaint, Plaintiff Suzanne Coyne brings claims for breach of contract, breach of the implied covenant of good faith and fair dealing, willful interference, retaliation, negligence, tortious interference, wrongful termination, intentional infliction of emotional distress and assault. *Doc. 1-2* at 14-23. These claims arise from her employment with Defendant LANS and alleged mistreatment by her supervisors after reporting an alleged assault by her co-worker, Jackie Little, and deciding to take leave under the Family Medical Leave Act ("FMLA"). *Id.* at 4-14. Ms. Coyne's husband, Plaintiff Robert Coyne, brings a claim for loss of consortium against Defendants.

1

*Doc. 1-2* at 22-23. In addition to emotional distress damages and the loss of his wife's society and companionship, Mr. Coyne states that he "lost income from his own business in order to care for the needs of his wife." *Id.* at 23.

Defendant LANS' Motion addresses three discovery disputes. The first involves three Requests for Production of Documents served upon Mr. Coyne to which LANS asserts he has failed to adequately respond. *See Docs. 57* at 5-8, *57-3* at 3. The second involves Mr. Coyne's refusal to answer a line of questioning posed to him during his deposition. *See Docs. 57* at 8-9, *57-2* at 9. Finally, Defendant LANS asks the Court to find that no attorney-client privilege attached to Ms. Coyne's email communications with her counsel when she used her LANS' email address. In the alternative, Defendant argues that Plaintiffs waived any attorney-client privilege to the subject matter of already produced emails without asserting privilege. Finally, to the extent any other communications during her employment may be subject to the attorney-client privilege, Defendants seek production of a privilege log. *Doc. 57* at 2-3.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 26(b)(1) governs the scope of discovery, providing that

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.*

Federal Rule of Civil Procedure 34 permits a party to serve requests for the production of documents and tangible things so long as the requested items are within the scope of discovery. Fed. R. Civ. P. 34(a). A request "must describe with reasonable particularity each item or category of items to be inspected[.]" Fed. R. Civ. P. 34(b)(1)(A). A party may move to compel production of a document or item requested under Rule 34 if good faith attempts to secure the response are unsuccessful. Fed. R. Civ. P. 37(a)(3)(B)(iv).

Pursuant to Rule 30, a party may depose any person or party by oral questions. Fed. R. Civ. P. 30. After the witness is placed under oath, "[t]he examination and cross-examination of a deponent proceed as they would at trial. . . ." Fed. R. Civ. P. 30(c)(1). Objections to particular lines of questioning "must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection." Fed. R. Civ. P. 30(c)(2). "A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the Court, or to present a motion [to terminate or limit the deposition] under Rule 30(d)(3)." *Id.* A party may move to compel an answer to a question asked in a deposition if good faith attempts to secure the answer are unsuccessful. Fed. R. Civ. P. 37(a)(3)(B)(i).

III.    ANALYSIS

A) **Requests for Production of Documents to Plaintiff Robert Coyne.**

Defendant LANS argues that Mr. Coyne failed to adequately respond to or supplement his responses to three requests for production of documents. *Doc. 57* at 5. Request for Production No. 1 to Mr. Coyne sought the production of all the materials he identified or consulted in responding to Defendant's interrogatories. *Doc. 57-3* at 2.

3

Request for Production No. 2 sought the production of any form of documentation in Mr. Coyne's control which "relate in any way to the allegations" contained in the Complaint. *Id.* at 3. Request for Production No. 3 sought all documents relating to or reflective of the damages claimed by Mr. Coyne. *Id.* Mr. Coyne indicated that he was providing responsive documents to all of these requests, but certain appointment calendars, responsive to Request for Production No. 2, were never produced.

At Mr. Coyne's deposition, he confirmed his possession of appointment calendars with some notes related to the litigation that were responsive to Request for Production No. 2, but stated that he had not yet had the opportunity to redact confidential patient information. *Doc. 57-2* at 2. Mr. Coyne also admitted that he had taken some notes on a "steno pad" regarding a conversation between Ms. Coyne and one of her employees, "Kelly," but stated that he was unaware of the location of these notes. *Id.* at 6. Mr. Coyne also admitted taking some notes of a conversation he had with a lab employee named Jackie Leeches and expressed that those notes were "[p]robably on [his] desk that's full of all kinds of papers." *Id.* at 11. Finally, Mr. Coyne indicated that he possessed appointment books and billing records which are responsive to Request for Production No. 3. *Doc. 57-2* at 7.

The parties agreed to hold Mr. Coyne's deposition open due to his failure to disclose the discussed documentation prior to it. *Doc. 57-2* at 12. After his deposition, Defendant LANS' counsel communicated with Plaintiffs' counsel on four separate occasions in an attempt to gain access to the described documents. *See Docs. 57-4, 57-5, 57-6* and *57-7*. Counsel for Plaintiffs responded to each inquiry (except the last) by stating that he was continuing to seek the documents from Mr. Coyne. *Id.*

4

Nonetheless, Mr. Coyne only produced some pages of his appointment calendars after Defendant LANS filed the instant Motion. *Doc. 61* at 2. Complicating matters, the appointment calendars that Mr. Coyne produced are redacted, but no redaction log was provided. Additionally, Mr. Coyne failed to produce his notes from Ms. Coyne's conversation with "Kelly" and his own conversation with Jackie Leeches, as well as his appointment books and billing records showing the income he lost from his counseling business. Thus, Defendant LANS seeks an order "compelling Mr. Coyne to produce all remaining responsive documents in his possession along with a privilege log for any redacted and withheld documents." *Doc. 65* at 3.

The Court finds that all of the described documents are within the scope of discovery and must be produced. Mr. Coyne is therefore ordered to produce any additional notes that are relevant to his claims in this case, including those notes memorializing Ms. Coyne's conversation with "Kelly" and his conversation with Jackie Leeches, as well as the appointment calendars and billing statements that he testified support his claim for lost income. To the extent that information is or has been redacted from these documents, the Court further orders Mr. Coyne to either produce the documents in an unreacted format and mark them as confidential so as to be protected by the parties' stipulated confidentiality and protective order (*Doc. 47*), or to complete a redaction log indicating what information has been withheld. *See McNabb v. City of Overland Park*, 2014 WL 1152958, at *5 (D. Kan. 2014) (unpublished) ("in lieu of producing unredacted emails, Defendant may elect to produce a redaction log for the redactions of the following particularly sensitive, confidential third-party information: license plate, driver's license, social security, and vehicle identification numbers; birth

5

dates; addresses; phone numbers; medical information; and information about criminal suspects, witnesses, informants, or victims.").

**B) Plaintiff Robert Coyne's Refusal to Answer Questions in his Deposition.**

During Mr. Coyne's deposition he testified that friends of Ms. Coyne would provide her information about various job openings at LANS. *Doc. 57-2* at 8. In response, Defendant LANS' attorney asked to Mr. Coyne to identify which of its employees remain friends with his wife. *Id.* Mr. Coyne replied, "Actually, no one. Every person in our lives have (sic) abandoned us because they don't want to get fired. They don't want to be retaliated against." *Id.* Counsel for LANS then asked Mr. Coyne if anyone had told him they were afraid to be retaliated against, and, when Mr. Coyne responded in the affirmative, asked him to name those individuals. *Id.* Mr. Coyne refused to name any individual LANS employees who had told him they were afraid of retaliation, first citing his Fifth Amendment rights, and then simply refusing to answer. *Id.*

Defendant now asks the Court to direct Mr. Coyne to resume his deposition and to identify the individuals who have stopped communicating with the Coynes because they fear retaliation by Defendant LANS, as well as "the content and circumstances of those communications." *Doc. 57* at 8-9. LANS also asks the Court to require Mr. Coyne to pay for the cost of the continued deposition. *Id.*

Mr. Coyne's refusal to answer was not at the direction of his counsel, *Doc. 57-2* at 9; however, Plaintiffs now argue that Mr. Coyne should not have to answer the question because, despite the absence of a privilege, it is not relevant to any claims asserted in the Complaint. *Doc. 61* at 2-3. Defendant LANS replies that the information is relevant to Ms. Coyne's claims of retaliation, as stated in Counts III and IV of the

6

Complaint. *Doc. 65* at 4. Defendant ties the identity of these individuals to these claims by pointing to a discovery response by Ms. Coyne wherein she indicates that none of her past co-workers, acquaintances and friends will communicate with her about the possibility of her resuming work for LANS. *Id.*

The Court finds the line of questioning to be within the scope of Rule 26(b)(1). Count III of the Complaint asserts that Defendants retaliated against Ms. Coyne for exercising her FMLA rights. *Doc. 1-2* at 17. Ms. Coyne claims damages including "lost wages, lost benefits and loss of future earning capacity." *Id.* Ms. Coyne contends that she continues to lose wages because she has been unable to find another job at LANS, and that one of the reasons she cannot find another job is because LANS employees will no longer communicate with her. Mr. Coyne explained in his deposition that LANS employees no longer communicate with Ms. Coyne because they fear retaliation. Defendant is entitled to explore the veracity of these statements and inquire as to which current LANS employees have refused to communicate with the plaintiffs because they fear retaliation from Defendants. Because no legal basis exists for Mr. Coyne's refusal to answer this line of questioning, he is will be ordered to pay for the cost of his continued deposition.

**C) LANS' Request for Production No. 7 to Plaintiff Suzanne Coyne and her assertion of the Attorney-Client Privilege.**

While she was still employed by Defendant LANS, Ms. Coyne communicated with her attorney in this action via her LANS computer and utilizing her LANS email account. *See Doc. 57-9.* These communications were discovered by Defendant "[i]n carrying out its document collection and review process" early in this litigation. *Id.* at 1. Upon this discovery, counsel for Defendant wrote to counsel for Plaintiffs on May 20,

7

2015, and notified him of its possession of these communications. *Id.* Counsel for LANS advised that none of its employees have a right to privacy when using the LANS computer system, and that this lack of privacy is communicated to employees via the following message each time an employee logs in:

> \*\*\*WARNING\*\*WARNING\*\*WARNING\*\*WARNING\*\*WARNING\*\*\*\*\*
> **This is a Department of Energy (DOE) computer system. DOE computer systems are provided for the processing of official U.S. Government information only. All data contained within DOE computer systems is owned by the DOE, and may be audited, intercepted, recorded, read, copied, or captured in any manner and disclosed in any manner, by authorized personnel.**
> **\***
> **THERE IS NO RIGHT OF PRIVACY IN THIS SYSTEM.**
> **\***
> **USE OF THIS SYSTEM BY ANY USER, AUTHORIZED OR UNAUTHORIZED, CONSTITUTES CONSENT TO THIS AUDITING, INTERCEPTION, RECORDING, READING, COPYING, CAPTURING, and DISCLOSURE of COMPUTER ACTIVITY.**
> **\***
> **\***
> \*\*\*WARNING\*\*WARNING\*\*WARNING\*\*WARNING\*\*WARNING\*\*\*\*\*

*Doc. 57* at 10. Defendant LANS' attorney informed opposing counsel of its position that none of Ms. Coyne's emails to her counsel using its computer system are subject to any right of privacy or confidentiality, and therefore by extension, the attorney-client privilege. *Id.*

Then on June 23, 2015, Plaintiffs' counsel indicated that he was producing with Plaintiffs' initial disclosures "all emails between [him] and Ms. Coyne that were sent to or from her Lab email account." *Doc. 57-9*. Plaintiffs' counsel also indicated that he would review his own email files to ensure that all pertinent communications had been produced. *Id.* Ms. Coyne represents that these emails were produced because they are not subject to any privilege. *Doc. 61* at 5. Later, Defendant completed its search of its

8

email system and discovered emails that were not produced with Plaintiffs' initial disclosures. *Doc. 57* at 11.

Defendant now also takes the position that Ms. Coyne has waived any arguable attorney-client privilege as it applies to <u>any</u> communications between her and her attorney concerning the subject matter of this litigation. *Doc. 57* at 11. To this end Defendant served Ms. Coyne with Request for Production No. 7, seeking all communications (not just those on the LANS server) between her and her counsel "regarding the subject matter of the complaint." *Doc. 57-10* at 2. Ms. Coyne objected to this request "pursuant to the attorney-client privilege and the attorney work-product" doctrines. *Id.* Ms. Coyne further objected to producing a privilege log "[b]ecause of the volume of documents and the nature of the privilege[.]" *Id.*

The parties communicated in good faith about Ms. Coyne's refusal to answer. *Docs. 57-11, 57-12, 57-13.* While they were unable to come to a resolution before Defendant LANS filed the instant motion, LANS did agree to limit the request to require the production to only those emails utilizing Plaintiff's LANS email address with the caveat that Ms. Coyne produce a privilege log for all other communications between her and her attorney for the period of December 1, 2011 through April 26, 2013 (the last date of her employment). *Doc. 57-13* at 2; *Doc. 57* at 16.

In response to Defendant's Motion to Compel, Ms. Coyne produced a privilege log for what she maintains are "the remaining documents sent through the LANS email system." *Doc. 61* at 5. Defendant argues that this production is insufficient because the privilege log only encompasses the emails sent from Ms. Coyne's LANS email address when it actually seeks a "privilege log for all communications between Ms. Coyne and

9

Mr. Grace during the period of her employment at LANS (regardless of the means of communication)[.]" *Doc. 65* at 6.

In federal court, privileges are generally governed by federal common law. *See* Fed. R. Evid. 501. However, "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." *Id.* Plaintiffs bring both federal and state law claims in this case, but the case was removed on federal question grounds because Plaintiffs asserts that Defendants violated the FMLA. *See Doc. 1*. Accordingly, the Count finds that federal privilege law applies. *See* Fed. R. Evid. 501, 1974 advisory committee notes ("[i]n nondiversity jurisdiction civil cases, federal privilege law will generally apply."); *see also Vondrak v. City of Las Cruces*, 760 F.Supp.2d 1170, 1177 (D.N.M. 2009) (holding that where jurisdiction is based on federal question rather than diversity, and there is supplemental jurisdiction over state law claims, federal law should govern privilege, even as to state law claims).

The attorney-client privilege is "the oldest of the privileges for confidential communications known to the common law." *In re Qwest Communications Int'l, Inc.*, 450 F.3d 1179, 1185 (10th Cir. 2006) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). "Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Id.* "Because confidentiality is key to the privilege, '[t]he attorney-client privilege is lost if the client discloses the substance of an otherwise privileged communication to a third party.'" *Id.* (quoting *United States v. Ryans*, 903 F.2d 731, 741 n.13 (10th Cir.1990)). The party seeking to invoke the attorney-client privilege bears the burden of establishing its applicability and the lack of

waiver of any privilege. *Martinez v. Department of Public Safety et al.*, CIV 11-0553 LFG/KBM, Doc. 33 (D.N.M. Feb. 15, 2012) (citing *Barclays-American Corp. v. Kane*, 746 F.2d 653, 656 (10th Cir. 1984); *Peat, Marwick, Mitchell & Co. v. West*, 748 F.2d 540, 542 (10th Cir. 1984)).

The Court finds that no attorney-client privilege arose as to her communications with counsel using her work computer and email address. The principle case that Defendant relies upon is *United States v. Hudson*, CR 13-20063-01-JWL, 2013 WL 4768084, at *9 (D. Kan. Sept. 5, 2013) (unpublished). *Hudson* sets forth factors for determining whether or not a privilege applies to materials kept on a workplace computer:

> (1) does the corporation maintain a policy banning personal or other objectionable use, (2) does the company monitor the use of the employee's computer or e-mail, (3) do third parties have a right of access to the computer or e-mails, and (4) did the corporation notify the employee, or was the employee aware, of the use and monitoring policies?

*Id.* at *9 (citations omitted). The *Hudson* Court recognized that "[t]he majority view is that the employees do not waive the privilege in material on their work computer simply because the employer can monitor their communications." *Id.* The court accordingly held that the employee had not waived the subject privilege by use of his work computer because he had a reasonable expectation of privacy in documents saved on it, the employer's policy did not prohibit personal use of the equipment, and the employer did not actually monitor his use. *Id.*

Here, however, LANS' warning clearly alerts its employees that the system is to be used for official government business only and cautions that no right of privacy attaches to any information in its computer system. Thus, no employee could have any

reasonable expectation of privacy in her personal emails using that system; indeed, Ms. Coyne acknowledged she had no such expectation at her deposition. Because an attorney-client privilege cannot attach to a communication unless it is confidential, Plaintiffs must produce all email communications with her counsel using the LANS computer system.

The Court is not prepared to find, however, that Ms. Coyne's production of certain emails between herself and her counsel amounts to a subject-matter waiver as to all communications involving this lawsuit. Federal Rule of Evidence 502(a) governs the subject-matter waiver of the attorney-client privileged information. The Rule states that a subject-matter waiver only applies if "(1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together." Fed. R. Evid. 502(a). "The idea [behind enactment of 502(a)] is to limit subject matter waiver to situations in which the privilege holder seeks to use the disclosed material for advantage in the litigation but to invoke the privilege to deny its adversary access to additional materials that could provide an important context for proper understanding of the privileged materials. . . ." *Silverstein v. Fed. Bureau of Prisons*, CIV 07-2471 PAB/KMT, 2009 WL 4949959, *12 (D. Colo. Dec. 14, 2009) (unpublished) (quoting 8 Charles A. Wright et al., Federal Practice and Procedure § 2016.2 (3rd ed. 2009 Supp.)). Thus,

> [t]he rule provides that a voluntary disclosure in a federal proceeding or to a federal office or agency, if a waiver, generally results in a waiver only of the communication or information disclosed; a subject matter waiver (of either privilege or work product) is reserved for those unusual situations in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary. [citations omitted] Thus, subject

12

> matter waiver is limited to situations in which a party intentionally puts protected information into the litigation in a selective, misleading and unfair manner.

Fed. R. Evid. 502, explanatory n.

Defendant LANS makes no showing that Ms. Coyne's disclosure of certain emails in this case was made with the intent to put protected information at issue in a selective, misleading or unfair manner. *See De Los Santos v. City of Roswell*, CIV 12-375 WPL/GBW, Doc. 112 (D.N.M. May 21, 2013) ("Defendants gain no tactical advantage by disclosing this information"). To the contrary, it appears as though Ms. Coyne only produced the emails she asserts are not subject to the attorney-client privilege because Defendant LANS was already in possession of them. This observation is bolstered by Ms. Coyne's continue assertion of the privilege as to communications with her attorney after the filing of the instant motion to compel. Furthermore, Defendant has not shown any prejudice it would suffer if it is denied access to the remaining communications between Ms. Coyne and her counsel.

While the Court will not find a subject-matter waiver, the fact remains that Ms. Coyne failed to produce a privilege log prior to the filing of the instant motion. This is contrary to the very clear language of Federal Rule of Civil Procedure 26(b)(5)(A), which states:

> [w]hen a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Fed. R. Civ. P. 26(b)(5)(A). While Ms. Coyne expressly claimed the attorney-client privilege in refusing to respond to Request for Production No. 7, she refused to produce a privilege log before Defendant filed the instant Motion. Furthermore, the privilege log she produced only accounts for those communications that were made using her LANS email address.

      The Court could find that Ms. Coyne's failure to timely produce an adequate privilege log waives any protection from disclosure the attorney-client privilege would have provided. *See Gobeille v. Trustmark Insurance Co.*, CIV 12-1154 JCH/KBM, Doc. 75 (D.N.M. Nov. 6, 2013) (quoting *Anaya v. CBS Broadcasting*, Inc., 251 F.R.D. 645, 651 (D.N.M. 2007), for the proposition that "[t]he law is well settled that failure to produce a privilege log or production of an inadequate privilege log may be deemed waiver of the privilege."). However, given Ms. Coyne's production of a limited privilege log in response to Defendant's Motion, and Defendant's indication that production of an adequate privilege log would at least preliminarily satisfy its request, the Court will instead order Ms. Coyne to produce a complete privilege log, encompassing all communications between herself and her counsel while she was employed by LANS.

    **D) Attorney's Fees for Motion to Compel**

      Defendant LANS has requested an award of attorney's fees and costs associated with bringing its Motion. *Doc. 57* at 17. Federal Rule of Civil Procedure 37(a)(5)(C) provides that when a motion to compel is granted, the Court must award the prevailing party its reasonable expenses, including attorney's fees, unless one of three exceptions apply. Fed. R. Civ. P. 37(a)(5)(A). Those exceptions include: (1) the filing of a motion to compel prior to attempting in good faith to obtain the discovery without court

action, (2) if the objection was substantially justified, or (3) other circumstances that make an award of expenses unjust. *Id.* After considering these factors, the Court finds an award of attorney's fees and costs warranted. Plaintiffs refused to comply with Defendant LANS' discovery requests even after extensive good-faith efforts were made to secure them, and none of Plaintiffs' objections were substantially justified. The Court notes that even Ms. Coyne's potentially meritorious assertion of the attorney-client privilege lacked an accompanying privilege log.

**Wherefore,**

**IT IS HEREBY ORDERED** that Defendant LANS' Motion to Compel (*Doc. 57*) is **granted in part** as follows:

(1) within fourteen (14) days of the entry of this Order, Plaintiff Robert Coyne must produce any and all documents which are responsive to Defendant LANS' Request for Production Nos. 1, 2, and 3, including, but not limited to, those items that he testified were in his possession during his deposition. These documents must be produced in an unredacted format or must be accompanied by a redaction log;

(2) after he has produced the referenced documents, Plaintiff Robert Coyne must submit to a second deposition at his expense wherein he must answer any questioning concerning the documents produced, as well as Defendant's questions about LANS employees who Plaintiffs allege have stopped communicating with them out of a fear of retaliation;

(3) to the extent that Plaintiff Suzanne Coyne asserts the attorney-client privilege as to Defendant's Request for Production No. 7, she must produce all

responsive LANS system email communications and complete privilege log accounting for all other communications between herself and her counsel while she was employed by LANS within fourteen (14) days of the entry of this Order;

(4) for the reasons stated above, Plaintiffs shall pay Defendant its reasonable attorney fees and costs incurred in bringing this motion; and

(5) in all other respects, the motion is **denied**.

_____
UNITED STATES CHIEF MAGISTRATE JUDGE