IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SUZANNE D. COYNE, and
ROBERT J. COYNE, SR.,

      Plaintiffs,

v.                                                         CIV 15-0054 SCY/KBM

LOS ALAMOS NATIONAL
SECURITY, LLC, NICHOLAS
DEGIDIO, and GAIL MCGUIRE,

      Defendants.

## **MEMORANDUM OPINION AND ORDER GRANTING IN PART DEFENDANT LANS' SECOND MOTION TO COMPEL**

THIS MATTER comes before the Court on Defendant LANS's Second Motion to Compel Discovery (*Doc. 127*), filed November 9, 2016. The Court considered the submissions of the parties as well as all pertinent authority, and heard oral argument on Friday, December 16, 2016. At the hearing, the Court orally ruled that the parties shall equally share the cost of the forensic inspection at issue in Defendant's Motion. This Memorandum Opinion and Order details the Court's rationale for this ruling.

**I.**     **Background**

During discovery, Defendant LANS served Mrs. Coyne with a request for production seeking all text messages "that relate in any way to any of the allegations contained in" the Complaint. *Doc. 127-2*. Mrs. Coyne did not object to this request, and she cooperated with Defendant LANS' attempts to retrieve her text messages from Verizon and Apple. Because these attempts were unsuccessful, Defendant LANS

1

served Mrs. Coyne with a "Request for Forensic Inspection of [her] iPhone" under Federal Rule of Civil Procedure 34. *See Doc. 127-1*. Pursuant to the Request, Mrs. Coyne must provide her iPhone to third-party vendor Epiq Systems, which will then attempt to recover Mrs. Coyne's communications with her treating expert psychiatrist, Dr. Deepa Nadiga, and with her husband, Plaintiff Robert Coyne. *Id.*

Mrs. Coyne does not object to the scope of the Request, so long as the time period is limited to December 1, 2011 to the present. *Doc. 127-10*. However, the Request concludes that "Plaintiffs shall bear the cost of the forensic inspection." *Doc. 127-1* at 2. It is this provision that lies at the heart of the parties' dispute, as it will cost approximately $2,850 for the inspection of Mrs. Coyne's iPhone. *Doc. 127-9*.

Defendant contends that as the responding party, Plaintiffs should "bear the cost of inspection, particularly where the need for the inspection is due to that party's own failure to preserve data." *Doc. 127* at 8. Plaintiffs do not dispute this general rule, but argue that in this instance, Defendant should bear the cost "because of the burden and expense of such inspection, [Plaintiffs'] lack of resources to pay for the inspection, the importance of the issues at stake in the litigation, and the relative benefits to the parties of conducting the inspection." *Doc. 128* at 1.

## II.   Legal Standard

"Under [the discovery] rules, the presumption is that the responding party must bear the expense of complying with discovery requests, but he may invoke the district court's discretion under Rule 26(c) to grant orders protecting him from 'undue burden or expense' in doing so, including orders conditioning discovery on the requesting party's payment of the costs of discovery." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340,

358 (1978). Both parties cite *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 322 (S.D.N.Y. 2003), in support of their positions.[1]

The *Zubulake* court came up with the following seven-factor test to be applied in the context of cost-shifting:

> 1. The extent to which the request is specifically tailored to discover relevant information;
>
> 2. The availability of such information from other sources;
>
> 3. The total cost of production, compared to the amount in controversy;
>
> 4. The total cost of production, compared to the resources available to each party;
>
> 5. The relative ability of each party to control costs and its incentive to do so;
>
> 6. The importance of the issues at stake in the litigation; and
>
> 7. The relative benefits to the parties of obtaining the information.

*Id.* According to *Zubulake*, these factors are not to be treated equally: "When evaluating cost-shifting, the central question must be, does the request impose an 'undue burden or expense' on the responding party? Put another way, 'how important is the sought-after evidence in comparison to the cost of production?'" *Id.* at 322-23 (quoted authority omitted). Thus, the first two factors carry greater weight and the final factor carries the least. *Id.* at 323.

---

[1] *Zubulake* has been cited as persuasive authority by courts in this district. *See Sowell-Albertson v. Thomas & Betts Corp.*, CIV 04-0760 RB/LFG, *Doc. 83* (D.N.M. May 5, 2005); *Radian Asset Assurance Inc. v. College of the Christian Brothers et al.*, CIV 09-0885 JB/DJS, *Doc. 183* (D.N.M. October 22, 2010); *Spilca v. Maryland Casualty Company*, CIV 13-0360 GBW/LFG, *Doc. 72* (D.N.M. November 26, 2013).

### III.     Analysis – Application of the *Zubulake* Factors

The parties agree that the request for the forensic inspection is specifically tailored to discover relevant information and that while there is testimony regarding the contents of the messages, the information requested is not available from other sources. The $2,850 estimated cost of the inspection to produce the text messages is but a small fraction when compared to the amount in controversy.[2]

At this point, neither party appears able to control the cost for recovery of the text messages, as the estimate for doing so is provided by a third-party. Indeed, Defendant already tried unsuccessfully to retrieve the messages through less expensive means. According to Plaintiffs, they simply cannot afford the cost for the forensic inspection. In connection with the imposition of sanctions for previous discovery violations, Plaintiffs submitted a financial statement *in camera* for the Court's review which corroborates that assertion. However, Counsel for Defendants noted some facts that call into question Plaintiffs' purported inability to contribute anything towards recovery of the text messages.[3]

Finally, Mrs. Coyne's psychiatrist testified at deposition that the requested text messages referenced stress in the Plaintiffs' marriage and a potential divorce. Thus, the recovery of those obviously relevant messages could have a significant impact on the pending emotional distress and loss of consortium damages claims. Clearly that is why Defendant LANS continues to seek their production.

---

[2]  Defendant represented in its motion that Plaintiffs claimed economic damages in excess of $800,000.00 in the initial disclosures.

[3]  Such evidence includes the May 2016 posting of a $10,000 cash-only bond in association with a DWI charge filed against Mr. Coyne and the purchase shortly thereafter of a Harley-Davidson motorcycle with significant monthly loan payments.

On balance, the factors favor Defendant's position that Plaintiffs should pay at least some portion of the cost to recover the text messages which can no longer be obtained from another source. Mrs. Coyne was on notice of their importance but failed to preserve them by simply changing the setting on her phone to prevent automatic deletions over time. Had she done so, they could have been easily and inexpensively produced.[4] Plaintiffs should therefore pay some portion of the necessary costs to recover them now.

## IV. Conclusion

Having considered the *Zubulake* factors, the Court concludes that if Defendant LANS decides to proceed with a forensic inspection of Mrs. Coyne's iPhone, Plaintiffs shall reimburse Defendant for half of the cost so incurred.

**IT IS SO ORDERED.**

_____
UNITED STATES CHIEF MAGISTRATE JUDGE

---

[4] There is no indication that Mrs. Coyne deliberately erased the messages because they will likely benefit Defendants' case.