IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SUZANNE D. COYNE,

        Plaintiff,

v.                                                      CIV 15-0054 SCY/KBM

LOS ALAMOS NATIONAL
SECURITY, LLC, NICHOLAS
DEGIDIO, and GAIL McGUIRE,

        Defendants.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER is before the Court on Defendants' Motion for Dismissal with Prejudice as Sanction for Plaintiff's Willful Destruction of Evidence (*Doc. 136*), filed January 20, 2017. On January 24, 2017, Defendants' Motion was referred to me to issue a report and recommendation pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (b)(3) by presiding Magistrate Judge Steven C. Yarbrough. *Doc. 140*. Having reviewed the briefs submitted by the parties, as well as all pertinent authority, the Court recommends that Defendants' Motion be granted.

### I.    Background

Plaintiff worked for Defendant Los Alamos National Security, LLC, ("LANS"), from July, 2003, until April 26, 2013, when she was terminated pursuant to a Reduction in Force policy. *Doc. 1-2* at ¶¶ 9, 58. Plaintiff alleges that this reason for her termination was illusory, and that she was actually terminated because she reported an assault by her coworker, Jackie Little, and took leave under the Family Medical Leave Act following this alleged assault. *See id.* ¶¶ 10-57. Plaintiff brought this lawsuit on December 11,

2014, asserting the following claims: Breach of Contract (LANS), Breach of Implied Covenant of Good Faith and Fair Dealing (LANS), Willful Interference and Retaliation (LANS, Degidio), Retaliation (LANS, Degidio, McGuire), Negligence (LANS, Degidio, McGuire), Tortious Interference Retaliation (Degidio, McGuire, Little), Wrongful Termination (LANS, Degidio, McGuire), Intentional Infliction of Emotional Distress (All Defendants), and Assault (Little). *Id.* ¶¶ 60-100.[1]

Discovery has not been smooth, and this Court has granted Motions to Compel against both Plaintiff and Defendants. *See Docs. 64* (Memorandum Opinion and Order ("MOO") granting in part Plaintiff's Motion to Compel), *70* (MOO granting in part Defendants' Motion to Compel). However, it is only Plaintiff and her husband's conduct that has warranted an award of attorney's fees. *See Doc. 70* at 16.

The Court granted Defendants' First Motion to Compel on March 10, 2016, finding that Plaintiff's husband, Robert Coyne, then a Plaintiff in this lawsuit, wrongfully withheld documents and refused to answer questions during his deposition and that Plaintiffs failed to produce an adequate privilege log. *See id.* at 3-14. In addition to ordering Robert Coyne to produce responsive documents and submit to a second deposition at his expense, the Court awarded Defendants their reasonable costs and attorney fees for bringing the motion pursuant to Federal Rule of Civil Procedure 37(a)(5)(C). *See id.* at 14-15. Defendants filed a Cost Bill on March 31, 2016, indicating that the amount expended in bringing the Motion totaled $3,750.00. *See Doc. 73*. Plaintiff did not object to this amount.

---

[1] Plaintiff's husband, Robert Coyne, Sr., was a Plaintiff in this action until Presiding Judge Yarbrough granted his motion to dismiss his sole claim for loss of consortium with his wife, on January 5, 2017. *See Doc. 134* (MOO Granting Plaintiffs' Motion to Modify Scheduling Order and Amend Complaint).

The sanctions ordered by this Court went unpaid, however, and on July 7, 2016, Defendants filed a second motion for sanctions based on Plaintiffs' failure to obey this Court's March 10, 2016, Order. *See Doc. 97*. In addition to seeking the unpaid sanctions, Defendants argued that Plaintiffs had committed further discovery violations in that they failed to produce responsive documents in their possession and failed to supplement their initial disclosures and discovery responses in a timely manner. *Id.* at 3.

The Court convened a hearing on Defendants' second motion for sanctions on August 12, 2016. *See Doc. 112* (Clerk's Minutes). At that hearing, the Court struggled with how to proceed in this case, given that Plaintiffs declared an inability to pay the sanctions imposed, yet were apparently able to post a $10,000.00 cash only bond in connection to criminal proceedings against Robert Coyne and to purchase a new Harley-Davidson motorcycle. *See Doc. 97* at 9, *Doc. 112* at 2. Moreover, the Court cautioned Plaintiffs that they faced potential adverse inferences from their failure to produce the responsive documents. *Doc. 112* at 3.

Ultimately, the Court granted Defendants' second motion for sanctions in part and ordered Plaintiffs to produce any remaining responsive documents, to provide sworn affidavits describing their document search efforts, to supplement their initial disclosures, to submit to a third deposition, and to pay Defendants: "(1) The costs of the second deposition of Suzanne Coyne on June 14, 2016, including any videographer costs; (2) the fees incurred in connection with the second deposition of Robert Coyne on May 24, 2016; (3) the costs and fees, including videographer charges, for a third deposition of each of the Plaintiffs, as described; and (4) the payments required by the Court's March 10, 2016, Order." *Doc. 111* at 2. Due in part to Plaintiffs' claimed inability

to pay for additional sanctions, the Court held in abeyance Defendants' requests for the fees and costs associated with bringing their second motion. *Id.*

Defendants filed a Second Cost Bill on August 22, 2016, establishing that the running total to be paid to them was now $7,089.28, and that Plaintiffs owed the videographer $629.72. *See Doc. 114*. Again, Plaintiffs did not object to these figures. In addition to these amounts, Defendants represent that Plaintiffs owe an additional $3,200.00 for the costs and fees associated with their third depositions. *See Doc. 136-9*.[2] This brings the total amount owed by Plaintiffs to $11,002.32.

The parties proceeded with discovery, and on September 30, 2016, Defendants served Plaintiffs' counsel with a request for a forensic inspection of Suzanne Coyne's iPhone. *See Docs. 117 127-1, 136-6*. This request stemmed from an earlier request for production wherein Defendants sought all text messages that "relate in any way to any of the allegations contained in" the Complaint. *See Doc. 127-2, 136-1* at 2. Specifically, Defendants sought text messages between Plaintiff and her husband, Robert Coyne, and between Plaintiff and her treating psychiatrist, Dr. Deepa Nadiga. *Doc. 136-6*. Plaintiff, who had failed to preserve the messages, did not object to the request and even cooperated with Defendants' attempts to retrieve them from her cellular carrier, Verizon, and from Apple before agreeing to the inspection. *See Docs. 136-7, 136-8*. Plaintiff, however, did object to paying for the cost of the forensic inspection. *See Doc. 136-8*. Therefore, Defendants filed a Second Motion to Compel Discovery in which they requested the Court order Plaintiff to pay for it. *See generally Doc. 127*.

---

[2] By the Court's calculation, the total amount owed for the third depositions of Suzanne and Robert Coyne is $3,283.32. *See Doc. 136-9*.

A hearing on Defendants' Second Motion to Compel Discovery was held on December 16, 2016. *See Doc. 132* (Clerk's Minutes). Through their Counsel, Plaintiffs represented that they lacked the resources to pay for the inspection's anticipated cost of $2,850.00. *Id.* at 2. While the Court questioned this assertion in light of the cash-only bond and motorcycle purchase, it ultimately found that the parties should share equally the cost of the forensic inspection. *See Doc. 133.* In reaching this decision, the Court found some of the sought text messages "obviously relevant" to Plaintiff's claim for emotional distress and Robert Coyne's then-pending claim for loss of consortium. *Id.* at 4. Moreover, Plaintiff was "on notice of their importance. . . ." *Id.* at 5. Relying on Plaintiff's assertion that she "failed to preserve them by simply changing the setting on her phone to prevent automatic deletions over time," *id.* at 5,[3] the Court ordered Plaintiffs to reimburse Defendants for half the cost of the forensic inspection of the iPhone. In doing so, the Court specifically noted that there was "no indication that Mrs. Coyne deliberately erased the messages. . . ." *Id.* at 5, n.4.

On January 4, 2017, at approximately 3:52 PM Plaintiff's counsel called Defendants' to report that he had possession of Mrs. Coyne's iPhone and was ready to ship it to the forensic examiner, Epiq eDiscovery Solutions ("Epiq") to see if the deleted text messages could be recovered. Counsel did just that the following day, *see Doc. 136-10*, and Epiq received Plaintiff's iPhone on January 9, 2017. *Doc. 144-1* at ¶ 2. Upon receipt, an Epiq employee placed the iPhone into a faraday box[4] and then placed

---

[3] Interestingly, Defendants now provide evidence that the default setting on an iPhone is to keep messages "forever," meaning that Plaintiff must have changed the settings on her iPhone to automatically delete messages at some point. *See Doc. 144-1* at ¶¶ 15-16.

[4] As detailed in the Affidavit of Jon Kessler, Senior Director of Forensic Consulting for Epiq eDiscovery Solutions, "[a] faraday box is an enclosure made of a mesh of conductive materials that is used to block incoming and outgoing radio waves from transmitting electronic devices, such as mobile phones. The

it into airplane mode to ensure that no transmissions would be sent or received by the phone. *Doc. 136-11* at ¶ 6. A forensic copy was then created of the device. *Id.* Jon Kessler, Senior Director of Forensic Consulting for Epiq, then attempted to analyze the iPhone and extract the relevant text messages. Alas, none was found. *Id.* ¶ 7.

In fact, "[u]pon initial inspection, the device contained very little content." *Id.* Mr. Kessler soon determined that Mrs. Coyne's iPhone had been **"erased and reset"** on or about January 4, 2017, at 9:44 AM MST, the day before Plaintiff's counsel shipped it to Epiq. *Id.*; *Doc. 144-1* at ¶ 4. Indeed, the "erase and reset" occurred ***just six hours*** before Plaintiff's counsel obtained possession of the iPhone for shipment to perform the forensic inspection.

In his affidavit testimony, Mr. Kessler explains that erasing and resetting an iPhone cannot happen accidentally or inadvertently. *Doc. 144-1* at ¶ 6. Rather,

> for a user of an Apple iPhone to erase and reset the phone they must take one of two actions. First, the user can erase and reset the device from the device itself. In order to do this, the user must follow a number of discreet steps, during which the user is specifically informed that if the user follows the prompts "This will delete all media and data, and reset all settings." And then "Are you sure you want to continue? All media, data, and settings will be erased. This cannot be undone." The user would also be required to enter a user passcode and/or Apple ID and password if enabled during this process. Second, an Apple iPhone can be remotely erased using the user's iCloud account and/or the Find my iPhone app. When this action is taken, the user is prompted "All your content and settings will be erased. An erased iPhone cannot be located or tracked." The user is then required to enter their Apple ID again to confirm, enter a message to display on the device and a call back number should the phone be found.

*Doc. 136-11* at ¶ 8. According to Mr. Kessler, "data that existed on the device prior to the erase and reset is not able to be recovered from the device." *Doc. 136-11* at ¶ 9.

---

faraday box isolates transmitting electronic devices from wireless radio frequency-based networks, such as WiFi and cellular." *Doc. 136-11* at n.1.

Furthermore, "[t]here is no way to determine what data, including text messages, may have been deleted but would still have been recoverable prior to the erase and reset." *Doc. 144-1* at ¶ 7.

After discovering that the iPhone had been erased and reset, Defendants' counsel wrote to Plaintiff's counsel on January 11, 2017. Defendants demanded not only an explanation but production of "any other copies, back-ups or sources of information that contain any of the data that existed on Ms. Coyne's iPhone prior to the deletion, including but not limited to data contained in iTunes, iCloud or on other phones, devices or home computers." *Doc. 136-14*. In a January 19, 2017, phone conference between counsel, Plaintiff's attorney stated that Mr. and Mrs. Coyne claimed to have no knowledge of what had happened. *Doc. 136-12* at ¶ 4. Plaintiff's counsel further indicated that Mrs. Coyne had contacted Verizon and Apple and was informed that although her contacts had been backed up, her text messages were not. *Id.*

It is against this backdrop that Defendants now move the Court to dismiss Plaintiff's case in its entirety with prejudice "as a sanction for Plaintiff's intentional and permanent erasure of all the data on her iPhone the day before it was produced" for the forensic evaluation. *Doc. 136* at 1. Plaintiff responds simply that she "did not engage in any destruction of evidence, willful or otherwise" and provides no explanation for the loss of the data. *Doc. 141* at 1.

Mrs. Coyne vehemently denies that she, or someone at her direction, erased and reset her iPhone, and offers her sworn affidavit and that of her husband in support of that position. *See Docs. 141, 141-1, 141-2*. However, Defendants have submitted evidence that calls into question the veracity of these affidavits. Specifically,

7

● within 2 minutes after it was erased and reset, Mrs. Coyne's iPhone "connected to a wireless network with the SSID (name) "LMR-WiFi[.]'" *Doc. 144*-1 at ¶ 10.

● the LMR-WiFi apparently belongs to the La Mesita Restaurant in Pojoaque.

● La Mesita Restaurant is located directly across the street from the RV park where Mrs. Coyne has resided since at least September 2016. *See Docs. 144-1* at ¶¶ 10-11, *144-2* at ¶¶ 4-7, *144-4* at 13:23-25.

● just 23 minutes after the iPhone was erased and reset, an outgoing phone call was placed to Robert Coyne. *Docs. 144-1* at ¶ 12.

● Mr. Coyne's phone number had to be manually entered using the iPhone's keypad because all contact numbers that had been stored on the iPhone had just been erased. *Docs. 144-1* at ¶13, *144-5* at 31:3-11.

Despite Mr. Kessler explanation that an iPhone cannot be accidentally or inadvertently erased and reset, Mrs. Coyne insists that "there is no evidence that any text messages were deliberately destroyed." *Doc. 141* at 3.

Alternatively, Plaintiff's counsel argues that "[i]f the Court believes, contrary to Plaintiff's sworn affidavit, that any misconduct occurred in connection with the production of Plaintiff's iPhone, dismissal of the case in its entirety with prejudice would not be an appropriate sanction." *Doc. 141* at 4. Plaintiff maintains that there is no evidence that, absent the erasure and reset, the forensic examination would have been able to retrieve any of the deleted messages. *Id. at 5.* Defendants reply that, due to the erase and reset, there is simply no way to know if the messages were retrievable, and that "[t]he law does not give Plaintiff the benefit of the doubt in this situation." *Doc. 144* at 10. Finally, Plaintiff argues that the Court has never warned Plaintiff "that dismissal would be a likely sanction for future failures to comply with discovery obligations." *Id.* at 5.

Having given due consideration to the factors set forth in *Ehrenhaus v. Reynolds*, 965 F.2d 916 (10th Cir. 1992), the Court will recommend that the presiding judge impose the sanction of last resort and dismiss this lawsuit with prejudice.

## II.   **Legal Standard**

"A spoliation sanction is proper where (1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence." *Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1032 (10th Cir. 2007) (citation omitted). Likewise, pursuant to Federal Rule of Civil Procedure 37(b)(2)(A)(v), "[i]f a party . . . fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders [including] . . . dismissing the action or proceeding in whole or in part[.]" Fed. R. Civ. P. 37(b)(2)(A)(v). "A district court [also] has inherent equitable powers to impose the sanction of dismissal with prejudice because of abusive litigation practices during discovery." *Rodriguez v. Presbyterian Healthcare Servs.*, No. 11-CV-238 JEC/LFG, 2012 WL 12896388, at *1 (D.N.M. Aug. 22, 2012), *aff'd*, 515 F. App'x 761 (10th Cir. 2013) (quoting *Garcia v. Berkshire Life Ins. Co.*, 569 F.3d 1174, 1179 (10th Cir. 2009)).

Thus, "[i]t is within a court's discretion to dismiss a case if, after considering all the relevant factors, it concludes that dismissal alone would satisfy the interests of justice." *Ehrenhaus*, 965 F.2d at 918. The relevant factors include:

(1) The degree of actual prejudice to the defendant;

(2) The amount of interference with the judicial process;

(3) The culpability of the litigant;

(4) Whether the court warned the party in advance that dismissal of the action
would be a likely sanction for noncompliance; and,

(5) The efficacy of lesser sanctions.

*Id.* at 921 (citations omitted). "These factors do not constitute a rigid test; rather, they
represent criteria for the district court to consider prior to imposing dismissal as a
sanction." *Id.* (citation omitted); *see Lee v. Max Int'l, LLC*, 638 F.3d 1318, 1323 (10th
Cir. 2011) ("The *Ehrenhaus* factors are simply a non-exclusive list of sometimes-helpful
'criteria' or guide posts the district court may wish to 'consider' in the exercise of what
must always remain a discretionary function."). "[N]or are the factors necessarily
equiponderant." *Chavez v. City of Albuquerque*, 402 F.3d 1039, 1044 (10th Cir. 2005).
Thus, "[d]ismissal is warranted when 'the aggravating factors outweigh the judicial
system's strong predisposition to resolve cases on their merits.'" *Rodriguez*, 2012 WL
12896388, at *2 (quoting *Ehrenhaus*, 965 F.2d at 921).

## III.  <u>Analysis</u>

The Court finds that spoliation sanctions are appropriate. While her duty to
preserve electronically stored information (ESI) arose much earlier, Plaintiff clearly had
a duty not to erase and reset her iPhone prior to the forensic examination by Epiq. The
affidavit testimony of both Mr. and Mrs. Coyne rings hollow in the face of the
overwhelming evidence cited above that she deliberately destroyed the ESI on her
iPhone to assure that any potentially negative text messages were not retrievable
during the impending forensic examination. As described more fully below, when the
*Ehrenhaus* factors are applied to the facts of this case, dismissal appears to be the only
effective sanction for this egregious conduct.

**A.  The degree of actual prejudice to Defendants**

Because "Plaintiff's text messages with her husband and psychiatrist are relevant to all her claims in litigation," *Doc. 136* at 11, Defendants argue that their "ability to fully prepare this case for trial has been permanently, irreparably and significantly damaged." *Doc. 136* at 21 (quoting *Philips Elecs. N. Am. Corp. v. BC Tech.*, 773 F. Supp. 2d 1149, 1210 (D. Utah 2011)). To be sure, this Court has held that these messages are directly relevant to Plaintiff's claim for emotional distress damages, *see Doc. 133* at 4, and further agrees with Defendants that the messages are relevant to Plaintiff's credibility and the veracity of *all* of her allegations against them, *see Doc. 136* at 13. Moreover, the messages are relevant to their affirmative defense under the after-acquired evidence doctrine. *Id.* at 14-15.

"The withholding of evidence 'substantially prejudices an opposing party by casting doubt on the veracity of all of the culpable party's submissions throughout litigation.'" *Freddie v. Marten Transp., Ltd.*, 428 F. App'x 801, 804 (10th Cir. 2011) (unpublished) (quoting *Garcia v. Berkshire Life Ins. Co. of America*, 569 F.3d 1174, 1180 (10th Cir. 2009)); *see also Rodriguez*, 2012 WL 12896388, at *3. Defendants here were entitled to review the content of Plaintiff's messages with her husband and psychiatrist in order to examine the veracity of her claims against them, including her claim for emotional distress damages. Defendants were thereby actually prejudiced when Plaintiff unilaterally destroyed any opportunity Defendants had to examine the content of these messages.

The Court further finds that Plaintiff and Robert Coyne's actions throughout this litigation has prejudiced Defendants "by causing delay and mounting attorney's fees."

*Jones v. Thompson*, 996 F.2d 261, 264 (10th Cir. 1993). Plaintiff's failures throughout the discovery process have resulted in the imposition of over eleven thousand dollars ($11,000.00) in sanctions, not to mention the substantial attorney's fees Defendants have expended in deposing Plaintiff and her husband three different times and investigating the erasure and resetting of Plaintiff's iPhone. Simply put, the prejudice prong easily weighs in favor of dismissal.

### B. The amount of interference with the judicial process

A party interferes with the judicial process when it ignores court orders. *Jones*, 996 F.2d at 265. As detailed above, this Court has assessed sanctions against Mr. and Mrs. Coyne for violations of their discovery obligations, the rules of procedure, and orders of the Court on multiple occasions. At least one of these sanctions – ordering Plaintiff to pay for half of the forensic inspection – arose out of Mrs. Coyne's previous "inadvertent" failure to preserve ESI on her iPhone. Interference with the judicial process arose repeatedly from Mr. and Mrs. Coyne's failure to make other timely disclosures and necessitated delays and scheduling of additional depositions and their accompanying costs.

Most importantly, "there is no greater interference with the judicial process than false testimony and the willful failure to disclose information." *Rodriguez*, 2012 WL 12896388, at *4. The Court finds that Mrs. Coyne's decision to erase and reset her iPhone "thwarted the truth-seeking function of litigation and interfered with the judicial process, satisfying the second *Ehrenhaus* factor." *Id.* Thus, the degree of interference with our judicial process cannot be overstated. This second consideration also supports dismissal with prejudice.

### C. The culpability of the litigant

"[A] dismissal or default sanctions order should be predicated on 'willfulness, bad faith, or some fault' rather than just a simple 'inability to comply.'" *Lee*, 638 F.3d at 1321 (quoting *Archibeque v. Atchison, Topeka & Santa Fe Ry.*, 70 F.3d 1172, 1174 (10th Cir.1995)). Here, there is little question that Plaintiff willfully erased and reset her iPhone prior to providing it to Epiq for inspection, given the series of steps required to achieve that result.

### D. Whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance.

The Court has searched the record and listened to the recordings of the two hearings it held in this case, and it appears that at no time during those hearings did the Court *explicitly* warn Plaintiff that her case was subject to dismissal if she spoliated evidence or failed to comply with her discovery obligations. On the other hand, the Court conducted several unrecorded discovery phone conferences in which it believes warnings were given about sanctions, including dismissal, for future violations of court orders or rules by the Coynes.

The Court is not convinced such a specific warning was required in this case, however. As noted above, the Tenth Circuit has made clear that the *Ehrenhaus* factors "'do not represent a rigid test' that a district court must always apply." *Lee*, 638 F.3d at 323 (quoting *Ehrenhaus*, 965 F.2d at 921); *see id.* at 1323-24 ("The dispositive question on appeal thus isn't whether the district court's order could or did touch every *Ehrenhaus* base. Instead, it is and always remains whether we can independently discern an abuse of discretion in the district court's sanctions order based on the record before us."). Accordingly, the Tenth Circuit has affirmed the dismissal of cases for

13

discovery abuses "notwithstanding a lack of advance warning." *See Rodriguez v. Presbyterian Healthcare Servs.*, 515 F. App'x 761, 763 (10th Cir. 2013) (unpublished); *see also Freddie*, 428 F. App'x at 804 (affirming absent advance warning where the plaintiff committed perjury during a deposition); *Garcia*, 569 F.3d at 1180 ("Although Ms. Garcia did not receive an explicit warning that dismissal would be a likely sanction for fabricating evidence, this is not a prerequisite to the imposition of dismissal sanctions.") *Chavez*, 402 F.3d at 1045  (affirming absent advance warning where the plaintiff committed perjury during a deposition); *Schroeder v. Sw. Airlines*, 129 F. App'x 481, 485 (10th Cir. 2005) (unpublished) (affirming dismissal absent a specific warning due to the "continuing nature" of the discovery misconduct, the extent of the prejudice to defendants, and the interference with the judicial process); *Archibeque*, 70 F.3d at 1175 (affirming dismissal absent advance warning where the plaintiff perjured herself).

A common theme runs through the above-cited cases: an express advance warning of dismissal may not be necessary when the litigant purposefully engages in tactics to avoid compliance with court orders or discovery obligations that are designed to hide the truth from an opposing party. While Defendants do not use the words "perjury" or "fabricated evidence," they do point out that the affidavits' "self-serving, unsupported denials . . . are belied by objective, forensic evidence that for all practical purposes establishes Plaintiff's guilt" in eliminating any chance for recovery of the text messages. The Court agrees that Mrs. Coyne's affidavit testimony in response to the instant motion is simply unbelievable.

Moreover, it is axiomatic that having ordered Plaintiff to pay for half of the forensic inspection, no warning was required to put Plaintiff on notice that steps to

defeat the goals of that inspection could lead to the ultimate sanction of dismissal. Indeed, as set forth above, Rule 37(b)(2)(A)(v) explicitly contemplates dismissal where a party fails to obey a discovery order. Given Plaintiff's history of discovery failures, for which she owes substantial monetary sanctions, the Court finds that no advance warning of dismissal was required.

### E. The efficacy of lesser sanctions

"The Court recognizes that dismissal is usually appropriate only where lesser sanctions would not serve the interests of justice." *Rodriguez*, 2012 WL 12896388, at *4 (citing *Meade v. Grubbs*, 841 F.2d 1512, 1520 (10th Cir. 1988)).

> Thus, in cases where a plaintiff fails to obey a court order, through inadvertence or simple neglect, the deterrent effect can usually be achieved through lesser sanctions. . . However, it is not an abuse of discretion for the district court to impose dismissal as a sanction where there has been egregious conduct by a party in the discovery process that interferes with the judicial process.

*Id.* (internal citations omitted). As found above, the erasure and reset were neither "though inadvertence or simple neglect" – those actions were deliberately undertaken.

The Court has considered the efficacy of lesser sanctions and concludes that none would serve to deter further violations or remedy the prejudice Plaintiff's actions have caused. Lesser available sanctions include "an award of attorney fees; an order that the culpable party produce related documents regardless of any claims of privilege or immunity; excluding evidence or striking party of a party's proof; allowing the aggrieved party to question a witness in front of the jury about missing evidence; and imposing costs for creating a substitute for spoliated data." *Browder v. City of Albuquerque*, 187 F. Supp. 3d 1288, 1295 (D.N.M. May 9, 2016) (internal citations omitted).

15

As to monetary sanctions, the Court has already awarded in excess of eleven thousand dollars ($11,000.00) in costs and attorney's fees against Plaintiff; yet, almost all of those monetary sanctions remain unpaid. Most importantly, none of the prior sanctions awarded were successful in deterring Plaintiff from erasing and resetting her iPhone the day before shipment to Epiq for inspection.

The Court also considered ordering Plaintiff to produce related documents, such as back-ups of her iPhone, without regard to any claims of privilege or immunity. Plaintiff avers in her affidavit that no such back-ups of her phone exist, however. Therefore, the Court cannot impose the lesser sanction of ordering Plaintiff to pay the costs associated with creating a substitute for the spoliated data, as none exists.

Finally, the Court has considered whether excluding evidence or allowing Defendants to elicit testimony in front of the jury about the missing messages would adequately remedy the prejudice Plaintiff has caused. The Court is unaware of any evidence in Plaintiff's favor that, if excluded, would balance the equities in this case. So too, while questioning Plaintiff about the missing messages on cross-examination might allow Defendants to impeach Plaintiff more effectively, *see Chavez*, 402 F.3d at 1044, it will not remedy Defendants' inability to verify Plaintiff's allegations as they relate to this suit through the lens of her spontaneous and unfiltered text messages.

## IV.   <u>Conclusion</u>

"Discovery misconduct often may be seen as tactically advantageous at first. But just as our good and bad deeds eventually tend to catch up with us, so do discovery machinations. Or at least that's what Rule 37 seeks to ensure." *Lee*, 638 F.3d at 1321 (citation omitted). Plaintiff's decision to erase and reset her iPhone the day before it was

16

produced to Epiq is but the culmination of her and her husband's willful failure to comply with their discovery obligations in this case.

Wherefore,

IT IS HEREBY RECOMMENDED that the Court grant Defendants' Motion to Dismiss (*Doc.136*).

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

---

_____
UNITED STATES CHIEF MAGISTRATE JUDGE